1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF WASHINGTON

8

Case No. 13-CV-03074 (VEB)

9

CODY BRAMSEN,

10

                 Plaintiff,

DECISION AND ORDER

11

vs.

12

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

13

               Defendant.

14
15

## I. INTRODUCTION

16

      In March of 2010, Plaintiff Cody Bramsen applied for Supplemental Security

17

Income ("SSI") benefits under the Social Security Act. The Commissioner of Social

18

Security denied the application.

19
20

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On April 2, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 20).

## II. BACKGROUND

The procedural history may be summarized as follows:

On March 11, 2010, Plaintiff applied for SSI benefits, alleging disability beginning September 15, 2009. (T at 192).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 11, 2012, a hearing was held before ALJ Marie Palachuk. (T at 45). Plaintiff appeared with an attorney and testified. (T at 64-76). The ALJ also received testimony from two medical experts, Dr. Richard Hutson (T at 50-53) and Dr. Marian Martin (T at 53-64), and Polly Peterson, a vocational expert. (T at 76-81).

On February 3, 2012, the ALJ issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the

---

[1] Citations to ("T") refer to the administrative record at Docket No. 13.

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

meaning of the Social Security Act.  (T at 15-37).   The ALJ's decision became the Commissioner's final decision on May 28, 2013, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On July 19, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 4, 2013. (Docket No. 12).

Plaintiff filed a motion for summary judgment on February 26, 2014. (Docket No. 19).   The Commissioner moved for summary judgment on April 9, 2014. (Docket No. 21).   Plaintiff filed a reply memorandum of law on April 23, 2014. (Docket No. 22).   As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

## III. DISCUSSION

### A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

1    activity and (2)   a "significant number of jobs exist in the national economy" that

2    plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

3    **B.     Standard of Review**

4          Congress has provided a limited scope of judicial review of a Commissioner's

5    decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision,

6    made through an ALJ, when the determination is not based on legal error and is

7    supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

8    1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

9    determination that a plaintiff is not disabled will be upheld if the findings of fact are

10   supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

11   1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

12   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a

13   preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

14   Substantial evidence "means such evidence as a reasonable mind might accept as

15   adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

16   (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]

17   may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*,

18   348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a

19   whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

20

1  *v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525,

2  526 (9th Cir. 1980)).

3         It is the role of the Commissioner, not this Court, to resolve conflicts in

4  evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

5  interpretation, the Court may not substitute its judgment for that of the

6  Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

7  Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be

8  set aside if the proper legal standards were not applied in weighing the evidence and

9  making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d

10 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the

11 administrative findings, or if there is conflicting evidence that will support a finding

12 of either disability or nondisability, the finding of the Commissioner is conclusive.

13 *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

14 **C.    Commissioner's Decision**

15        The ALJ found that Plaintiff had not engaged in substantial gainful activity

16 since March 11, 2010, the application date. (T at 20). The ALJ determined that

17 Plaintiff's chronic pancreatitis, degenerative changes of the lumbar spine with

18 scoliosos, cortical defect bilateral knees, attention deficit hyperactivity disorder,

19 learning disorder, mood disorder (NOS), personality disorder (NOS), alcohol

20

dependence, and marijuana dependence were "severe" impairments under the Act. (Tr. 20-24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24-26). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), except that he was limited to occasional stooping and kneeling. The ALJ found that Plaintiff could perform simple, routine, repetitive tasks, with occasional interaction with the public, co-workers, and supervisors; would need additional time to adapt to changes in the work setting; would be able to sustain attention for two hour intervals with scheduled breaks; and would need to be in a routine environment with few distractions. (T at 26-30).

The ALJ found that Plaintiff could not perform his past relevant work as a sandwich maker. (T at 30-31). However, considering Plaintiff's age (21 years old on the application date), education (limited), work experience (unskilled), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 31). As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from March 11, 2010 (the application date), through February 3, 2012 (the date of the ALJ's decision) and was

therefore not entitled to benefits. (Tr. 31-32).  As noted above, the ALJ's decision became the Commissioner's final decision on May 28, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.  He offers two (2) main arguments in support of this position.  First, Plaintiff challenges the ALJ's assessment of the medical evidence and subjective complaints regarding his pancreatitis symptoms.  Second, Plaintiff argues that the ALJ's step five analysis was flawed.  This Court will address both arguments in turn.

**1.        Assessment of Medical Evidence Concerning Pancreatitis**

During the administrative hearing, Plaintiff testified that, approximately two to four days per week he has stomach pain that limits his appetite and causes him to double over in pain for 15 to 20 minutes several times a day. (T at 71).  On those days, he has frequent diarrhea, with several trips to the restroom lasting 30-45 minutes per trip. (T at 72).  The ALJ explained that she was "just somewhat puzzled" and asked Plaintiff the following question: "Pancreatitis doesn't cause diarrhea so have the doctors told you what the cause of your diarrhea is?" (T at 81).  Plaintiff responded: "No, they haven't.  They just told me that my pancreas is inflaming . . . so I don't know what's going on with the diarrhea problem, you know.

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

It just mainly hurts a lot and then it like simmers down a little bit after I go . . . ." (T at 81).

Plaintiff contends that the assumption contained in the ALJ's question (i.e. that diarrhea is not as symptom of pancreatitis) is incorrect, citing the website of the U.S. National Library of Medicine, National Institutes of Health.[2]  Plaintiff argues that the ALJ's error caused her to misevaluate the medical evidence and improperly discount Plaintiff's credibility. The Commissioner essentially concedes that the assumption contained in the ALJ's question was wrong, but argues that the error was harmless because it did not materially influence the ALJ's decision.

For the following reasons, this Court finds that the error contained in the ALJ's hearing question did not play a material part in her evaluation of the evidence. In sum, the ALJ considered Plaintiff's claim of disabling diarrhea and concluded that the objective medical evidence did not support it.  This finding was supported by substantial evidence irrespective of whether the ALJ properly understood the link between pancreatitis and diarrhea.

First, the ALJ considered Plaintiff's testimony concerning diarrhea and, although her question during the administrative hearing contained a mistaken assumption about pancreatitis symptoms, the ALJ did not cite that mistaken

_____

[2] The website address is: http://www.nlm.nih.gov/medlineplus/ency/article/000221.htm.

10

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

assumption in her decision.  In other words, in deciding to discount Plaintiff's claim of disabling diarrhea, the ALJ did not cite her (mistaken) belief that diarrhea was not a symptom of pancreatitis.  This provides at least some support for the conclusion that if the ALJ retained her mistaken understanding at time of her decision, it did not play a significant part in that decision.

Second, the ALJ cited objective evidence that tended to contradict Plaintiff's claims of disabling, chronic diarrhea. A hospital discharge report prepared by Dr. Brett Kronenberger of St. James Hospital in Butte, Montana, dated March 31, 2010, reported that Plaintiff had been admitted for severe abdominal pain and constipation. (T at 317).  Plaintiff complained of "some belly pain on and off for four months." (T at 317).  A CT scan of Plaintiff's abdomen "really just showed constipation," with "some mild dilation of the small bowel," and no indication of pancreatitis. (T at 317, 323).

In June of 2010, Plaintiff was evaluated by Dr. Florian Cortese, a gastroenterologist.  Dr. Cortese reported that Plaintiff complained of "some early satiety, bloating" and sleep problems, but "denies any diarrhea . . . ." (T at 448).  He diagnosed "[a]bdominal pain with elevated amylase and lipase, possible pancreatitis though the etiology for this is uncertain." (T at 449).

An abdominal ultrasound was performed in November of 2010. Plaintiff's pancreas was noted to be "unremarkable." (T at 441). An October 2011 report from Yakima Neighborhood Health Services indicated that Plaintiff denied any complaints of diarrhea. (T at 478).

Robert Mitgang, a non-examining State Agency medical review consultant opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand/sit for about 6 hours in an 8-hour workday. (T at 335). Dr. Mitgang found Plaintiff limited to occasional stooping and kneeling. (T at 336). He noted Plaintiff's chronic pancreatitis and chronic back pain and opined that Plaintiff should be capable of working with these limitations. (T at 339).

Third, although treating providers provided conclusory opinions regarding Plaintiff's pancreatic issues, the ALJ reasonably discounted these opinions. Ruth Lee, PA-C, a treating physician's assistant, completed a note dated June 8, 2010, in which she opined that Plaintiff was "disabled from pancreatic problems," needed "insurance to obtain a cure," and "cannot work." (T at 342). In July of 2010, Dr. George Mulcaire-Jones, a treating physician, completed a note reporting that Plaintiff had persistent upper abdominal pain, needed further imaging and medical insurance to "diagnose" the problem, and was "now disabled." (T at 359).

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

Here, the opinions of Ms. Lee and Dr. Mulcaire-Jones are quite conclusory, consisting of a few lines of handwritten notes on prescription pad paper without any reference to clinical or diagnostic testing.  An ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).   In addition, Ms. Lee's opinion is not consistent with her treatment notes.   For example, a March 30, 2010 note described Plaintiff has having stomach pain, but "voiding normal[ly]." (T at 331).   A May 2010 note documents continued stomach pain, notes a diagnosis of "mild pancreatitis," described Plaintiff as doing "fairly well until lately," and makes no mention of diarrhea. (T at 330).   This discrepancy provided a reasonable basis for the ALJ to discount Ms. Lee's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(finding that "discrepancy" between treatment notes and opinion was "a clear and convincing reason for not relying on the doctor's opinion regarding" the claimant's limitations).

Moreover, and most importantly, the brief opinions offered by Dr. Mulcaire-Jones and Ms. Lee were contradicted by the evidence discussed above, including a CT scan, abdominal ultrasound, State Agency review consultant assessment, and contemporaneous treatment notes.

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.   If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's finding was supported by substantial evidence and should be sustained. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

### 2.    Step Five Analysis

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In this case, Polly Peterson, a vocational expert, testified at the administrative hearing.  During the hearing, Plaintiff's counsel asked Ms. Peterson to assume a hypothetical claimant limited to simple, routine, repetitive tasks, with an ability to sustain attention and concentration and mental control "within the bottom five percent of the general work force," with processing speed "at the 20 percent level of the general population," and with a need for redirection and reminders. (T at 80). Ms. Peterson opined that a person with these limitations would not be able to maintain competitive employment. (T at 80).

Counsel's hypothetical was based on a psychoeducational assessment completed in October of 2004 by the Sisters School District.  The assessment found that Plaintiff's ability to exert mental control was "within the borderline range and better than that of approximately 5% of his age-mates." (T at 421).  Plaintiff's speed of information processing abilities were found to be "within the low average range and better than those of approximately 21% of his age mates." (T at 420).

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

The ALJ referenced this evidence in her decision (T at 20, 23), but did not incorporate these limitations into her RFC assessment. Plaintiff contends that this was an error and the ALJ was obliged to rely on Ms. Peterson's answer to the hypothetical that included these limitations. This Court finds that substantial evidence supports the ALJ's assessment, including the step five analysis.

First, the psychoeductional evaluation was conducted when Plaintiff was a sophomore in high school, more than five years before the alleged onset date. (T at 18, 48).

Second, the hypothetical presented by Plaintiff's counsel assumed, without foundation, that the assessments references to Plaintiff's percentile abilities as compared to his school-age peers could be directly translated to percentile abilities related to the general population. The psychoeducational evaluation considered Plaintiff's abilities in relation to his (then) school-aged classmates. For example, the assessment found that Plaintiff's ability to exert mental control was "within the borderline range and better than that of approximately 5% of his *age-mates*." (T at 421) (emphasis added). Plaintiff's counsel asked Ms. Peterson to assume a hypothetical claimant with an ability to sustain attention and concentration and mental control "within the bottom five percent of *the general work force . . . .*" (T at 80)(emphasis added). Plaintiff's counsel had no foundation for assuming that

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

Plaintiff's abilities as compared to school-aged peers were directly translatable to his abilities when compared with the general work force.

Third, the ALJ reasonably relied on the assessment of Dr. Marian Martin, a clinical psychologist, who testified at the administrative hearing as a medical expert. Dr. Martin reviewed the medical records, including the school psychoeducational evaluation, and opined that Plaintiff was limited to simple, routine, repetitive tasks and to occasional interaction with co-workers. (T at 58-59).  Dr. Martin found that Plaintiff could maintain attention and concentration for two-hour intervals that are generally required between regularly scheduled breaks if he was not in a highly distractible environment. (T at 59).

The ALJ incorporated Dr. Martin's findings into a hypothetical presented to the vocational expert. (T at 77).  Ms. Peterson opined that the hypothetical claimant could not perform Plaintiff's past relevant work as a sandwich maker[3], but could perform other work. (T at 78).  Ms. Peterson identified three jobs that a person with these limitations could perform – potato chip sorter, basket filler, and worm packer (T at 78).  According to the vocational expert, there are 477,577 potato chip sorter jobs nationally and 21,157 jobs regionally; the basket filler position has 540,218 jobs

---

[3] The vocational expert did not offer a detailed explanation for this finding.  She simply stated that the past relevant work was "too exertional." (T at 78).

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

nationally and 23,932 regionally; and the worm packer position has 108,308 jobs nationally and 4,765 positions regionally. (T at 78).  The ALJ then relied on this testimony in her step five analysis. (T at 31).  This Court finds that substantial evidence supports the ALJ's analysis, including the assessments of a medical expert and vocational expert.

Plaintiff also contends that the ALJ's hypothetical to Ms. Peterson was flawed because it did not account for his gastrointestinal problems and low back pain.  The ALJ's findings with regard to Plaintiff's gastrointestinal problems are sustained based on the evidence outlined above, including CT scan, abdominal ultrasound, State Agency review consultant assessment, and contemporaneous treatment notes. With regard to low back pain, the ALJ's hypothetical asked the vocational expert to assume a claimant limited to occasional stooping and kneeling. (T at 77).  This limitation was consistent with the record, including the assessments of Dr. Richard Hutson, an orthopedic surgeon who testified as a medical expert at the hearing (T at 52) and the opinion of Dr. Robert Mitgang, a non-examining State Agency medical review consultant. (T at 336).  The ALJ was not obliged to accept as true limitations alleged by Plaintiff and was within her discretion to decline to include such limitations in the vocational expert's hypothetical if she concluded that they were

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering a decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## V. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 19**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No. 21**, is **GRANTED**.

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB

1    The District Court Executive is directed to file this Order, provide copies to

2    counsel, enter judgment in favor of the Commissioner, and close this case.

3    DATED this 23rd day of May, 2014.

4

5                                    /s/Victor E. Bianchini
                                    VICTOR E. BIANCHINI
6                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

DECISION AND ORDER – BRAMSEN v COLVIN 13-CV-03074-VEB